ORIGINAL

530 new

FILED

JUN 12 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

Name _Siqueiros    Cleto_
       (Last)       (First)       (Initial)

Prisoner Number _V-76620 / 1-0-111_

Institutional Address _P. O. Box 5242, Corcoran, CA 93212_

===============================================================

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

MMC

_Cleto Siqueiros_
(Enter the full name of plaintiff in this action.)

vs.

_Ken Clark, Warden_

(Enter the full name of respondent(s) or jailor in this action)

CV 08    2939

Case No. _____
(To be provided by the clerk of court)

**PETITION FOR A WRIT**
**OF HABEAS CORPUS**

(PR)

# E-filing

===============================================================

<u>Read Comments Carefully Before Filling In</u>

When and Where to File

       You should file in the Northern District if you were convicted and sentenced in one of these counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in this district if you are challenging the manner in which your sentence is being executed, such as loss of good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

       If you are challenging your conviction or sentence and you were <u>not</u> convicted and sentenced in one of the above-named fifteen counties, your petition will likely be transferred to the United States District Court for the district in which the state court that convicted and sentenced you is located. If you are challenging the execution of your sentence and you are not in prison in one of these counties, your petition will likely be transferred to the district court for the district that includes the institution where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS    1

1    <u>Who to Name as Respondent</u>

2        You must name the person in whose actual custody you are. This usually means the Warden or

3    jailor. Do not name the State of California, a city, a county or the superior court of the county in which

4    you are imprisoned or by whom you were convicted and sentenced. These are not proper

5    respondents.

6        If you are not presently in custody pursuant to the state judgment against which you seek relief

7    but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8    custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack

9    was entered.

10    <u>A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE</u>

11      1. What sentence are you challenging in this petition?

12          (a)    Name and location of court that imposed sentence (for example; Alameda

13               County Superior Court, Oakland):

14      _Superior Court_        _San Jose, CA_

15               Court                           Location

16          (b)    Case number, if known _CC 452853_

17          (c)    Date and terms of sentence _4/19/05  15 yrs to life plus 14 yrs. consecutive_

18          (d)    Are you now in custody serving this term? (Custody means being in jail, on

19               parole or probation, etc.)       Yes _X_    No _____

20               Where?

21               Name of Institution: _Substance Abuse Treatment Facility_

22               Address: _P.O. Box 5242, Corcoran, CA 93212_

23      2. For what crime were you given this sentence? (If your petition challenges a sentence for

24    more than one crime, list each crime separately using Penal Code numbers if known. If you are

25    challenging more than one sentence, you should file a different petition for each sentence.)

26    _Penal Code § 261_

27    _Penal Code § 288_

28    _____

PET. FOR WRIT OF HAB. CORPUS      - 2 -

3. Did you have any of the following?

    Arraignment:                          Yes __X__       No _____

    Preliminary Hearing:              Yes __X__       No _____

    Motion to Suppress:              Yes _____       No __X__

4. How did you plead?

    Guilty _____    Not Guilty __X__    Nolo Contendere _____

    Any other plea (specify) _____

5. If you went to trial, what kind of trial did you have?

    Jury __X__    Judge alone_____    Judge alone on a transcript _____

6. Did you testify at your trial?             Yes _____       No _____

7. Did you have an attorney at the following proceedings:

    (a)    Arraignment               Yes __X__       No _____

    (b)    Preliminary hearing      Yes __X__       No _____

    (c)    Time of plea  *N/A*      Yes _____       No _____

    (d)    Trial                       Yes __X__       No _____

    (e)    Sentencing                Yes __X__       No _____

    (f)    Appeal                   Yes __X__       No _____

    (g)    Other post-conviction proceeding    Yes _____       No __X__

8. Did you appeal your conviction?        Yes __X__       No _____

    (a)    If you did, to what court(s) did you appeal?

        Court of Appeal            Yes __X__       No _____

        Year: *2006*    Result: *Denied* _____

        Supreme Court of California    Yes __X__       No _____

        Year: *2007*    Result: *Denied* _____

        Any other court            Yes _____       No __X__

        Year: _____    Result:_____

    (b)    If you appealed, were the grounds the same as those that you are raising in this

PET. FOR WRIT OF HAB. CORPUS    - 3 -

1   petition?                                      Yes _____   No _X_

2          (c)    Was there an opinion?            Yes _____   No _√_

3          (d)    Did you seek permission to file a late appeal under Rule 31(a)?

4                                                  Yes _____   No _____ √/N

5          If you did, give the name of the court and the result:

6          _N/N_____

7          _____

8   9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

9   this conviction in any court, state or federal?        Yes _X_   No_____

10          [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

11  challenged the same conviction you are challenging now and if that petition was denied or dismissed

12  with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13  for an order authorizing the district court to consider this petition. You may not file a second or

14  subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

15  U.S.C. §§ 2244(b).]

16          (a)    If you sought relief in any proceeding other than an appeal, answer the following

17                 questions for each proceeding. Attach extra paper if you need more space.

18          I.     Name of Court: _Santa Clara County Superior Court_

19                 Type of Proceeding: _Habeas Corpus_____

20                 Grounds raised (Be brief but specific):

21                 a._Ineffective Assistance Of Counsel_____

22                 b._____

23                 c._____

24                 d._____

25                 Result: _Denied_____Date of Result: _1/29/07_

26          II.    Name of Court: _Second District Court of Appeal_

27                 Type of Proceeding: _Habeas Corpus_____

28                 Grounds raised (Be brief but specific):

PET. FOR WRIT OF HAB. CORPUS        - 4 -

1   a. *Ineffective Assistance Of Trial Counsel*

2   b. *Ineffective Assistance Of Appellate Counsel*

3   c. _____

4   d. _____

5   Result: *Denied* _____ Date of Result: *8/29/07*

6   III.   Name of Court: *California Supreme Court*

7   Type of Proceeding: *Habeas Corpus* _____

8   Grounds raised (Be brief but specific):

9   a. *Ineffective Assistance Of Trial Counsel*

10  b. *Ineffective Assistance Of Appellate Counsel*

11  c. _____

12  d. _____

13  Result: _____ Date of Result: _____

14  IV.   Name of Court: _____

15  Type of Proceeding: _____

16  Grounds raised (Be brief but specific):

17  a. _____

18  b. _____

19  c. _____

20  d. _____

21  Result: _____ Date of Result: _____

22  (b)   Is any petition, appeal or other post-conviction proceeding now pending in any court?

23                          Yes _____    No _X_

24  Name and location of court: _____

25  B. GROUNDS FOR RELIEF

26  State briefly every reason that you believe you are being confined unlawfully. Give facts to

27  support each claim. For example, what legal right or privilege were you denied? What happened?

28  Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS          5

1    need more space. Answer the same questions for each claim.

2       [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3    petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4    499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5       Claim One: Ineffective Assistance Of Trial Counsel, i.e.

6    failing to call available expert witness

7    Supporting Facts: See Attached Petition

8

9

10

11      Claim Two: Ineffective Assistance Of Trial Counsel, i.e.

12    failing to call relevant defense witnesses

13    Supporting Facts: See Attached Petition

14

15

16

17     Claim Three: Ineffective Assistance Of Appellate Counsel, i.e.

18    failing to argue illegal sentence on appeal

19    Supporting Facts: See Attached Petition

20

21

22

23       If any of these grounds was not previously presented to any other court, state briefly which

24    grounds were not presented and why:

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS       - 6 -

1         List, by name and citation only, any cases that you think are close factually to yours so that they

2    are an example of the error you believe occurred in your case.  Do not discuss the holding or reasoning

3    of these cases:

4    *See Attached Petition* _____

5    _____

6    _____

7    Do you have an attorney for this petition?          Yes_____     No__X__

8    If you do, give the name and address of your attorney:

9    _____

10         WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11    this proceeding.  I verify under penalty of perjury that the foregoing is true and correct.

12

13    Executed on ___*6-3-08*___                  _____

14                Date                          Signature of Petitioner

15

16

17

18

19

20    (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS     7

1  CLETO SIQUEIROS
   SATF
2  V-76620/1-D-111
   P.O. Box 5242
3  Corcoran, CA 93212

4  **IN PROPRIA PERSONA**

5

6

7

8              UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10                 SAN JOSE DIVISION

11

12 CLETO SIQUEIROS,        )
            Petitioner,   ) Case No._____
13                         )
   vs.                     )
14                         )
   KEN CLARK, WARDEN,      )
15        Respondent.      ) **PETITION FOR WRIT OF HABEAS CORPUS PURSUANT**
   _____    ) **TO 28 U.S.C. § 2241(c)(3) AND 28 U.S.C. § 2254**

16

17              **I. INTRODUCTION**

18      Petitioner, Cleto Siqueiros, acting as his own advocate in

19 this matter, hereby petitions this Honorable Court for a Writ Of

20 Habeas Corpus, and hereby affirmatively alleges that his state

21 conviction in **Santa Clara County Superior Court No. CC452893** is

22 and was constitutionally infirm within the purview of **28 U.S.C.**

23 **§ 2241(c)(3)** and **28 U.S.C. § 2254** thereby giving this Honorable

24 Court absolute jurisdiction to entertain the legal and factual

25 claims and arguments presented by Petitioner in this petition,

26 and by this verified petition, Petitioner states as follows:

27 ///

28 ///

                        -1-

## II. STATEMENT OF EXHAUSTION

Petitioner maintains that each and every factual and legal claim made in this petition has been properly exhausted within the mandates of the **AEDPA**. (see also **Picard** v **Connor**, 404 U.S. 270, 275-76 (1971)) In this regard, Petitioner's Petition For Review was denied by the California Supreme Court on **September 12, 2007**, and Petitioner's Habeas Corpus petition with all of the claims presently in front of this Honorable Court in this petition, was denied **April 30, 2008.1/** As such, not only are Petitioner's claims made in this petition fully exhausted, **but said claims are timely as well within the purview of** 28 U.S.C. § 2244(d)(1)(A). (see copies of california Supreme Court Petition For Review Denial and Petition For Habeas Corpus Denial, attached hereto as Exhibit "A")

## III. ISSUES PRESENTED FOR REVIEW

In this petition, Petitioner makes the following legal and factual claims for relief:

1. Trial counsel was ineffective for failing to put an expert on the stand (an available expert) to rebut the prosecution's expert;
2. Trial counsel was ineffective for failing to call to the stand witnesses who would have effectively impeached the credibility of the complainant;
3. Appellate counsel was ineffective for failing to argue Petitioner's illegal sentence on Counts One and Two of the Information, and;
4. The cumulation of errors mentioned herein were prejudicial to Petitioner's trial that are cause for reversal in this proceeding.

---

1/ Due to the United States Supreme Court's decision in Cunningham v California 127 S.Ct. 856 (2007) the California Supreme Court dismissed Petitioner's first Petition For Review "without prejudice" on August 30, 2006. After further briefing relief was fully denied on September 12, 2007 in the order at Exhibit "A" supra. Due to the first petition being denied without prejudice submitting a new or second Petition For Review was proper within the purview of Semtek Intern v Lockheed Martin, 531 U.S. 497, 505-06 dismissal without prejudice does not bar refiling same issue in same court.

-2-

**PETITIONER'S TRIAL COUNSEL WAS INEFFECTIVE FOR
FAILING TO CALL TO THE STAND AN EXPERT WITNESS
(AVAILABLE EXPERT WITNESS) TO REBUT THE EXPERT
WITNESS USED BY THE PROSECUTION AT PETITIONER'S
TRIAL**

During the course of any criminal trial, it is a well accepted practice used by defense counsel to attack the integrity of the prosecution's case by showing/establishing for the trier of fact that the quality of the investigation undertaken by either the police and/or prosecution was subpar. (**Kyles v Whitley, 514 U.S. 419, 446 (1995)**) As part of this attack, if the prosecution brings to the stand and expert witness to give an opinion on a matter critical to the issues at hand, the defense too is allowed to bring to the stand an expert witness to rebut the expert witness/expert opinion used by the prosecution. (**Evidence Code § 730, Torres v Municipal Court (1975) 50 Cal. App. 3d 778, 785**) The only prerequisite to this rule is that the defendant, in this case an indigent defendant, must show that expert services are necessary for his/her defense. (**People v Faxel (1979) 91 Cal. App. 3d 327, 330**) In this regard, the United States Supreme Court in **Caldwell v Mississippi, 472 U.S. 320 (1985)** also recognized that a state's duty to assist an indigent defendant does not come into play unless the defendant and/or defendant's counsel makes a showing of reasonableness for said expert witness services. (**Id. 472 U.S. at 323 n.1**)

With this backdrop, not only will Petitioner show this Honorable Court that he was in need of an expert witness to counter the expert opinion of that given by the prosecution in Petitioner's case, but trial counsel was **ineffective for failing to call such a witness when one was available to the defense.**

During the course of Petitioner's trial, the prosecution called to the stand Mary Ritter, Physician Assistant at Santa Clara Valley Medical Center to give an opinion to an alleged narrowing of the hymen of the complainant. According to Ms. Ritter, this narrowing of the hymen was/is an indicator that the vagina had been previously penetrated. (R.T. 254, lines 1-21, attached as Exhibit B ) But Ms. Ritter could not say with any degree of certainty as to whether or not the alleged penetration occurred through force or if it was caused by consensual sex. (R.T. 270, lines 2-9, attached as Exhibit C )

As to this opinion (expert opinion) testimony which went unchallenged due only to trial counsel's failure to investigate the professional background of Ms. Ritter Petitioner was never able to present to the jury **that the opinion testimony of Ms. Ritter was incorrect or inaccurate.** In this regard, after Petitioner's conviction and sentence he discovered one published decision from the Ninth Circuit **Franklin v Henry 122 F3d 1270 (9th 1997)** calling into question the expert opinion of Ms. Ritter in that case. The **Franklin** court gave a brief discussion of Ms. Ritter's expert opinion on her theory of vaginal penetration in that case:

> **"[S]hayna was later interviewed by Mary Ritter, a "physician assistant" at the Center for Child Protection at Santa Clara Valley Medical Center. Under Dr. David Kerns she did the medical evaluation of children alleged to have been sexually abused. In particular, she examined Shayna's hymen, the mucous membrane at the opening of the vagina which at her age would be delicate and thin and very sensitive. Ritter noted that Shayna's hymenal rib was "narrower" than I would expect in a child her age." (Franklin, supra, 122 F3d at p. 1271)**

-4-

The aforecited reasoning by Ms. Ritter in **Franklin** is identical to that of the opinion testimony Ms. Ritter gave in Petitioner's case, but the court in **Franklin** made a point to make it clear that **four (4) experts, including Ms. Ritter's supervisor, found that the victims hymen DID NOT exhibit penetration:**

> "[A] pediatrician who examined her for a bladder infection during the time in question saw no signs of sexual abuse. A psychiatrist, Dr. Lee Coleman, who had made study of the physical evidence of sexual abuse, found her hymen to be normal, i.e. not effected by penetration. A gynecologist Dr. Jack Silveria, also found her hymen to be normal. The director of the Center for Child Protection at Santa Clara Valley Medical Center, Dr. David Kerns who testified for the prosecution, conceeded on cross that Shayna's hymen was in the upper range of normal."
> (**Franklin**, supra, 122 F3d at p. 1271)

From the court's observations in **Franklin v Henry**, supra, there are only two (2) acceptable and logical conclusions relating to the expert opinion of Ms. Ritter in that case, either Ms. Ritter was wrong or Ms. Ritter was being untruthful, in either setting, at least in **Franklin** Ms. Ritter's expert opinion/expert testimony was called into question. With this being so, it is Petitioner's contention, **since Petitioner is claiming to be innocent of the rape allegation,** that the opinion given by Ms. Ritter in his case was either wrong or was based on a falsehood, and Petitioner's trial counsel should have investigated Ms. Ritter's professional background prior to her being allowed to take the stand at the trial.

From the foregoing, the first question that needs answering prior to delving into Petitioner's ineffective assistance of counsel claim is, **was an expert witness available to the defense**

-5-

at the time of trial or before trial that could have given the
complainant an  independent examination, and was an expert
available to the defense either at or before trial who could have
reviewed the findings made by Ms. Ritter and given competent
testimony on those findings? The answer to both of these questions
is **YES!** In **Franklin**, the court first mentioned Dr. Lee Coleman as
being an expert in the study of the physical evidence surrounding
sexual abuse claims in children. Currently Dr. Coleman has a
practice in Berkeley, California:

> **Dr. Lee Coleman**
> **1889 Yosemite Rd.**
> **Berkeley, CA 94707**
> **Phone/Fax (510) 527-7512**
> **Email-lcoleman@sirius.com**

At the time of Petitioner's trial and before Petitioner's
trial Dr Coleman was listed at the above-mentioned address, so
if trial counsel had bothered to conduct any form of pretrial
investigation into the facts and law surrounding Petitioner's
case, counsel would have discovered Dr. Coleman as an expert in
the field. Secondly, **if Petitioner, being a prisoner with the
California Dept. of Corrections is able to find cases such as
Franklin v Henry, supra, then counsel should have also been able
to find Franklin v Henry, but counsel failed to do so and the only
reason why counsel failed to do so is due simply to his failure
to conduct a pretrial investigation in Petitioner's case.**

Assuming arguendo that counsel did not have a duty to
present as part of Petitioner's defense the inaccuracies of Ms
Ritter's expert opinions, counsel still could have **and should have
obtained the assistance of a gynecologist to examine the
complainant prior to trial.** This examination would have been more

-6-

than enough to impeach the expert opinion of Ms. Ritter before
the jury. **And once again, the only reason why trial counsel
never bothered to ask that the complainant be given an independent
examination by a gynecologist was due solely to a lack of pretrial
investigation.** So the record is clear **the reason why Petitioner
knows that the expert opinion of Ms. Ritter would have been
impeached is due to the fact PETITIONER IS INNOCENT OF THE RAPE
ALLEGATION.**

    Thirdly, even assuming that counsel could explain away his
failure to call Dr. Coleman to the stand and his failure to have
the complainant examined by a gynecologist, there is no
explanation as to why counsel failed to subject Ms. Ritter to a
proper cross-examination. As shown supra, the court in **Franklin v
Henry** found Ms. Ritter's opinions to be lacking, and counsel, who
could have obtained a copy of the **Franklin** decision if he had
done a pretrial investigation into the facts and law of the case,
would have known that Ms. Ritter's expert opinion in at least one
previous case was found to be inaccurate, and counsel could have
subjected Ms. Ritter to a cross-examination regarding this
previous opinion if he had done his homework. In this regard,
it is beyond dispute that once a witness takes the stand he/she
is subject to cross-examination and impeachment. (**Evidence Code
§ 780 (Testimony; proof of truthfulness; consideration)**) Now while
it is clear that a criminal defendant is not entitled to a
cross-examination that is effective in whatever way desired by
the defendant (**Deleware v Fensterer**, 474 U.S. 15, 20 (1985)), on
the other hand, it has been noted that juries tend to give more
credence to a person(s) who is giving testimony as an expert on

a particular subject. (**People** v **Garcia** (1993) 17 Cal. App. 4th 1169,
1185) With this being the case, it is Petitioner's belief that it
was his counsel's duty to make legitimate attack(s) on Ms. Ritter's
professional credibility not only because she gave a questionable
opinion in **Franklin** v **Henry**, supra, but during the course of Ms.
Ritter's testimony in Petitioner's case **she stated that she had
given between 150 and 200 opinions during judicial proceedings and
that she had conducted 4,000 pediatric sexual assault examinations.**
(see R.T. 241, lines 15-22 attached as Exhibit  D ) But nowhere
does either Ms. Ritter and/or the prosecution ever mention that
Ms. Ritter's opinions have been called into question in at least
one other case, as such, Petitioner maintains that his trial
counsel had an affirmative duty to delve into a proper and adequate
cross-examination of Ms. Ritter's expert opinions once she took
the stand at Petitioner's trial **and by counsel's failure to do so
this caused Petitioner's trial counsel to be ineffective within the
purview of the Sixth Amendment of the United States Constitution.**

From the foregoing, since Petitioner believes that he has
laid the proper groundwork exhibiting counsel's failure **to call
an expert to the stand such as Dr. Coleman to attack Ms. Ritter's
professional/expert opinions, and counsel's failure to have the
complainant examined by a gynecologist, as well as counsel's
failure to cause Ms. Ritter to be subjected to a proper and adequate
cross-examination based on the findings of the court in Franklin v
Henry**, supra, it is now upon Petitioner to show this Honorable Court
how counsel's failures caused prejudice to his defense. (**Strickland v
Washington**, 466 U.S. 668 (1984). See also **People** v **Ledesma** (1987) 43
Cal. 3d 171)

—8—

In **Strickland v Washington**, the United States Supreme Court set forth a two prong test that must be met prior to a criminal defendant/petitioner gaining success on a claim of ineffective assistance of counsel. As to the first prong in **Strickland** the petitioner **is required to show that his counsel's actions or inactions fell below an objective standard of reasonableness under prevailing professional norms**. (**Strickland**, supra, **466 U.S. at 688. People v Ledesma**, supra, **43 Cal. 3d at p. 216**) As to this prong Petitioner believes that by his trial counsel failing to call to the stand an expert witness such as Dr. Coleman to attack the credibility of Ms. Ritter's medical opinions most certainly caused counsel's **professional performance to fall below an objective standard of reasonableness under prevailing professional norms,** this is so, if for no other reason **prior to counsel deciding to act or not to act a particular way counsel is required to conduct an investigation into the facts and law surrounding the case.** To this, writing for the majority in **Strickland**, Associate Justice O'Connor made clear:

> "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."
> (**Strickland**, supra, **466 U.S. at 691**)

In **People v Ledesma**, supra, Associate Justice Mosk, writing for the majority, came to the same conclusions rendered by the **Strickland** court in relation to counsel's duty to investigate prior to undertaking any action in a criminal case:

~5~

"[t]he defendant can reasonably expect that in the course
of representation his counsel will undertake only those
actions that a reasonably competent attorney would
undertake. But he can also reasonably expect that before
counsel undertakes to act at all he will make a rational
and informed decision on strategy and tactics founded on
adequate investigation and preparation."
(<u>People</u> v <u>Ledesma</u>, supra, **43 Cal. 3d at p. 215**)

Following the afore-cited statements from both <u>**Strickland**</u>
and <u>**Ledesma**</u> Petitioner maintains that counsel **never bothered to**
**do an actual investigation into the facts and law of the case,** for
if he had counsel would have discovered Dr. Lee Coleman <u>**and would**</u>
<u>**have called Dr. Coleman to the stand to attack the credibility of**</u>
<u>**Ms. Ritter**</u>. Furthermore, **due to counsel's failure to investigate**
**the facts and law counsel failed to have the complainant examined**
**by a gynecologist.** And due to counsel's failure to do a background
investigation of Ms. Ritter, counsel failed to discover <u>**Franklin**</u> **v**
<u>**Henry**</u>, supra, which would have given counsel cause to subject Ms.
Ritter to a more rigorous cross-examination since it could be
proven that Ms. Ritter's opinions have been found to be inaccurate
on at least one occasion. With these facts, since both <u>**Strickland**</u>
and <u>**Ledesma**</u> have found it imperative for counsel to do a pretrial
investigation into the facts and law of a particular case **and**
**since counsel in Petitioner's case never bothered to conduct any**
**such pretrial investigation Petitioner maintains that counsel's**
**professional performance fell below an objective standard of**
**reasonableness discussed in** <u>**Strickland**</u>.

In conclusion to the first prong of the <u>**Strickland**</u> test,
Petitioner believes that it is imperative to note that not only
did counsel fail to do a pretrial investigation into the facts
and law involved with Petitioner's case, but in Petitioner's case

he told his counsel that he was **not guilty** of the rape allegation,
and with Petitioner telling counsel that he was innocent, counsel
had the affirmative duty to work from the standpoint that
Petitioner was indeed innocent since this was the information
available to counsel on the subject:

> "[C]ounsel's actions are usually based, quite properly
> on informed strategic choices made by the defendant
> and on information supplied by the defendant."
> (<u>Strickland</u>, supra, **466 U.S. at 691**. accord <u>Barber v</u>
> <u>Municipal Court</u> (1979) 24 Cal. 3d 742, 751)

But in Petitioner's case, due to counsel's failure to call
to the stand experts such as Dr. Lee Coleman and to have the
complainant examined by a gynecologist, this conclusively proves
counsel never bothered to listen to Petitioner when Petitioner
told counsel he was innocent of the charge of rape. From the
foregoing, with the facts in total, Petitioner believes that he
has met the first prong of the test announced by the <u>**Strickland**</u>
court.

As to the second prong of the <u>**Strickland**</u> test, it is upon
Petitioner **to show that there is a reasonable probability of a
different outcome if counsel had not erred.** (<u>**Strickland**</u>, supra,
**466 U.S. at 695**) In other words, **Petitioner must show that counsel's
errors undermined confidence in the outcome. (<u>Id. 466 U.S. at 595</u>)**
As to this prong, it has been recognized **in cases of ineffective
assistance founded on a lack of investigation that the strength(s)
and/or the weakness(es) of the prosecution's case need to be
examined prior to the ineffective assistance claim being granted.**
(<u>**Eggleston**</u> v <u>U.S.</u> 798 F2d 374, 376 (9th Cir. 1986)) In this regard,
while the prosecution did have the testimony of the complainant
(the credibility of the complainant will be discussed infra)

-11-

and Petitioner did in fact admit to one count of molestation (but no rape and no penetration), the prosecution, other than the expert opinion of Ms. Ritter, never produced any evidence that there had been a rape. With these facts, **and with Petitioner claiming innocence on the rape allegation** it is Petitioner's factual and legal contention that by counsel failing to call to the stand an expert such as Dr. Coleman who had the background knowledge of Ms. Ritter's questionable opinions, and failing to have the complainant examined by a gynecologist, that these failings allowed th jury to add more weight to Ms. Ritter's opinions than they would have had the jury been aware of the fact that Ms. Ritter's opinions had been called into question in at least one other case.**2/** And so the record is clear, without the rape allegation, Petitioner would not have received a life sentence. With this being the case, **due to the posture of the case against Petitioner being circumstantial in nature, and due to Ms. Ritter's opinions going unchallenged due to counsel's failings, Petitioner believes that the case against him was not that that strong.**

Secondly, while petitioner fully understands that counsel is not under an affirmative obligation to interview every prospective witness suggested by the defendant **on the other hand it is patently incompetent for him to review none regarding the crux of the anticipated defense. (**In re Cordero** (1988) 46 Cal. 3d 161, 184)** In the case at bar, Petitioner's only defense to the

---

2/ Due to Petitioner's incarceration his investigative abilities are extremely limited. So while Petitioner can present cases such as Franklin v Henry, questioning the accuracy of Ms. Ritter's opinions, there may be other available evidence on Ms. Ritter's opinions unknown to Petitioner.

rape allegation was that he was innocent of the charge, and the only way for counsel to have presented this defense **was by and through the use of expert testimony and/or expert evidence showing Ms. Ritter's opinions were wrong and/or inaccurate.** This information was readily available to counsel had counsel researched the available information and come up with **Franklin v Henry**, supra, and Dr. Coleman's address, but due to counsel's failure to do any form of **adequate pretrial investigation** none of the evidence questioning Ms. Ritter's opinions ever came to light, and this failure to investigate and bring forth this evidence most certainly caused Petitioner prejudice under both prongs of the **Strickland** test discussed throughout this argument.

In conclusion to this argument, following **Strickland**, Petitioner believes that he has shown this Honorable Court that his counsel's professional performance caused prejudice to his case, and due to counsel's failings that **this undermined confidence in the outcome of his trial.** With this being the case, Petitioner believes that at the very least, he is entitled to an evidentiary hearing to develop a more complete record for review.

**PETITIONER'S TRIAL COUNSEL WAS INEFFECTIVE FOR
INTENTIONALLY FAILING TO INTRODUCE AVAILABLE
IMPEACHMENT EVIDENCE RELATING TO THE CREDIBILITY
OF THE COMPLAINANT**

Prior to addressing the facts and law surrounding this
issue it needs to be stressed that Petitioner, while he was accused
of committing multiple counts of molestation and one count of
rape, Petitioner admitted to one count of molestation, and in fact
that one count is and was the only count Petitioner was guilty of,
and the complainant made up the rest of the charges involved in
the case. In this regard, not only did the complainant, Petitioner's
step-daughter, invent charges against Petitioner but she also
gave testimony claiming that Petitioner's brother, Ramon Siqueiros,
and Petitioner's wife, Micaela Morales, were witnesses to some of
the events in question, but as petitioner will show, based on the
attached **Sworn Declarations** of Petitioner's brother and wife **the
events testified to by the complainant simply did not happen**, and
Petitioner's counsel was told by both Petitioner's brother and wife
**tha**t the complainant was being untruthful and that they both wanted
to testify to said untruthfulness, but counsel never bothered to
call to the stand Petitioner's brother, and while Petitioner's
wife was called to the stand, counsel never asked any questions
surrounding the truthfulness of the allegations made by the
complainant. As such, while the jury was allowed to hear from the
complainant that Petitioner's brother and wife were witnesses to
some of the events testified to by the complainant **the jury, due
solely to counsel's failure to call to the stand Petitioner's
brother and his failure to ask proper questions to Petitioner's**

wife, the jury never heard that the allegations made by the
complainant were patently false.

As to Petitioner's brother, Ramon Siqueiros, the complainant
testified that he had come into her room and saw her with her
pants and underwear down to her knees and asked what had happened:

> Q: WHEN YOU WOKE UP IN THE MORNING, DID YOU SEE
>    ANYBODY WHEN YOU WOKE UP?
> A: WELL, I DON'T KNOW WHERE HE WAS, BUT MY UNCLE
>    RAMON CAME.
> Q: YOUR UNCLE RAMON CAME INTO THE ROOM?
> A: YES.
> Q: AND THAT WAS THE NEXT MORNING?
> A: YEAH.
> Q: AND DID HE SAY SOMETHING TO YOU?
> A: WELL, HE--WELL, HE SAID HE--WELL, MY PANTS WERE
>    LIKE NOT--I DON'T KNOW HOW TO SAY IT.

and:

> Q: WHAT DID YOUR UNCLE RAMON SAY TO YOU?
> A: WHY WERE MY PANTS DOWN.
> Q: WHAT DID YOU SAY?
> A: NOTHING. I DON'T KNOW.
> (see R.T. 140, lines 1-11, and R.T. 141, lines 1-5
> attached as Exhibit E )

The only problem with this testimony **is that the events
never occurred.** Prior to trial, both Petitioner's wife and
brother told his Preliminary Hearing counsel (which was also
Petitioner's trial counsel) that the complainant was being
untruthful, but even though counsel had direct knowledge of the
complainant's untruthfulness, counsel never bothered to put on the
stand Petitioner's brother to counter the allegations made by the
complainant. Instead, all it seemed was that Petitioner's counsel
was interested in was how much money he could get out of the
family instead of presenting a defense for Petitioner. Attached as
Exhibit  F is a Sworn Declaration from Ramon Siqueiros attesting
to the fact that during the course of the trial, during breaks

-15-

Petitioner's counsel would come out into the audience and talk to
the family on the issue of how much money counsel could get from
the family for Petitioner's defense. Attached as Exhibit  G  to this
petition are Sworn Declarations from Petitioner's mother, Gavina
Valdez, Petitioner's sister, Juana Siqueiros and Petitioner's
sister-in-law, Maricela Flores, all attesting to the fact that
Petitioner's trial counsel would constantly ask the family for
money and threatening Petitioner with prison time if the family
did not come up with the money counsel was asking for. In this
regard, Petitioner's trial counsel was appointed to represent him
by the Santa Clara County Public Defender's Office so there was no
reason for counsel to ask the family for money when he was being
paid by the County for his services.

As to the Sworn Declaration of Ramon Siqueiros at Exhibit  F
supra, not only does he attest to the fact that counsel was asking
the family for money, but he also makes clear that he told counsel
about the untruthfulness of the complainant, but was never called to
the stand by counsel.

As to Petitioner's wife, Micaela Morales, she too submitted
a Sworn Declaration about the complainant's untruthfulness and on
counsel asking the family for money. (see Sworn Declaration attached
as Exhibit  H ) But counsel never bothered to call her to the stand
about the complainant's untruthfulness, even though she told counsel
about problem's with the complainant's credibility. As to the first
claim made by the complainant regarding Petitioner's wife, it was
alleged that the complainant told her mother (Petitioner's wife)
that Petitioner had grabbed her chest:

-16-

Q: SO YOU TOLD HER ABOUT HOW HE GRABBED YOUR CHEST.
WHEN HE GRABBED YOUR CHEST, DID HE--WAS HE IN
FRONT OF YOU WHEN HE GRABBED YOUR CHEST?
A: YES.
Q: AND HOW DID HE GRAB IT?
A: WELL, HE JUST GRABBED IT AND RUBBED IT.
Q: WITH HIS HANDS?
A: YES.
Q: DID HE RUB IT WITH BOTH HANDS, RUB YOUR CHEST WITH
BOTH HANDS OR JUST ONE?
A: ONE.

and:

Q: SO A COUPLE OF DAYS LATER, EITHER THE NEXT DAY OR
COUPLE DAYS LATER, YOU TOLD YOUR MOM ABOUT THAT,
RIGHT?
A: YEAH.
Q: AND YOU SAID THAT AT THAT POINT, OR AT SOME POINT
THEREAFTER, SHE AND YOUR STEPDAD, THE DEFENDANT,
GOT INTO A FIGHT?
A: YES.
(see R.T. 148, lines 4-14 and lines 21-27 attached as
Exhibit  I )

The only problem with this testimony is that the events

being testified to by the complainant never occurred. Petitioner's

wife never heard anything about Petitioner grabbing the complainant's

chest and never argued with Petitioner over any such a thing.

Petitioner's wife made it clear to his trial counsel that the

complainant was being untruthful, but at no time did counsel ever

bother to present this untruthfulness to the jury for their

consideration. Now while counsel called to the stand Petitioner's

wife, the only questions given to Petitioner's wife had to do

with a phone call where she overheard the complainant naming

Petitioner in the charged crimes, but this testimony was given

outside the presence of the jury to see if the testimony could

pass muster under the hearsay rules, and while the court was

going to allow the testimony about the phone call to go in front

of the jury, counsel never presented this testimony to the jury.

-17-

In another incident where the complainant falsely alleged that Petitioner's wife was a witness, the complainant claimed to have been using the bathroom Petitioner walked in and had the complainant put her hand on his penis. According to the complainant Petitioner wife walked into the bathroom and witnessed both the complainant and Petitioner with their pants down and they argued about the incident:

> Q: **WHEN YOUR MOM CAME IN, WAS YOUR HAND STILL ON HIS PENIS?**
> A: **NO.**
> Q: **WERE HIS PANTS STILL DOWN WHEN YOUR MOM CAME IN?**
> A: **YES.**
> Q: **WHAT HAPPENED NEXT AFTER YOUR MOM CAME IN?**
> A: **WELL, MY MOM CAME IN AND THEN I JUST PULLED MY PANTS UP AND HE DID TOO, AND SHE SAW US PULLING OUR PANTS UP. AND THEN MY MOM, SHE WAS--SHE WAS MAD. AND THEY STARTED ARGUING AND I JUST GOT OUT.** (see R.T. 157, lines 21-28 and R.T. 158, lines 1-2 attached as Exhibit J )

Once again, the events testified to by the complainant naming Petitioner's wife as being a witness **simply never occurred,** and trial counsel, through his talks with Petitioner's wife knew that the complainant was being untruthful about the events in question, but even knowing this to be the case counsel never bothered to put any of this evidence in front of the jury for their consideration **even though the jury was the trier of fact within the purview of Evidence Code § 312 (Jury as trier of fact)** and had the duty to weigh and determine the credibility of the witnesses in Petitioner's case.

From the foregoing, two things are clear **(1)** Petitioner's trial counsel knew from his talks with Petitioner's brother and wife that the complainant's testimony was being exaggerated, and **(2)** trial counsel never bothered to put either of these witnesses

18

on the stand to challenge the version of events as was stated by

the complainant, and due to this failure to present such

**exculpatory evidence** Petitioner maintains that his counsel was

ineffective within the purview of <u>Strickland</u> v <u>Washington</u>, supra.

From a purely legal standpoint, counsel's failure to

present evidence that could either effectively establish his

client's innocence and/or could raise a sufficient doubt about

the question of quilt **renders ineffective assistance of counsel:**

> **"[A] lawyer who fails adequately to investigate, and to introduce into evidence information that demonstrates his client's factual innocence, or that raises sufficient doubts as to that question to undermine confidence in the verdict, renders deficient performance."**
> (<u>Rios</u> v <u>Rocha</u> 299 F3d 796, 805 (9th cir. 2002), <u>Avila</u> v <u>Galaza</u> 297 F3d 911, 919 (9th Cir. 2002), <u>Lord</u> v <u>Wood</u> 184 F3d 1083, 1093 (9th Cir. 1999), and <u>Hart</u> v <u>Gomez</u> 174 F3d 1067, 1070 (9th Cir. 1999))

While the afore-cited cases are lower federal court

decisions not binding on this court, if the court reviews said

decisions it will be clear that the reasoning of the Ninth Circuit

in all of the afore-cited cases comes directly from the United

States Supreme Court in <u>Strickland</u> v <u>Washington</u>, supra. Therefore,

the reasoning of the afore-cited cases should have some binding

authority with this Honorable Court, especially here where

Petitioner's sole defense to the rape charge and the molestation

charges was that he was innocent except for one molestation

charge, and the evidence presented by Petitioner through his

own testimony was that the complainant was angry with him for

taking her to the hospital to have her examined for drug use and

sexual activity. In fact, so the record is clear, while the

prosecution alleged charges on Petitioner that ranges over a

–19–

six (6) or seven (7) year period of time, the complainant never accused Petitioner of any wrongdoing until she was taken to Valley Medical Center by Petitioner and Petitioner's wife which occurred years later after the alleged molestations occurred. With this defense, which was not unreasonable due to the complainant waiting years to report any alleged wrongdoing, **it is clear counsel's performance was professionally deficient for failing to call to the stand both Petitioner's wife and brother to bolster Petitioner's defense that the complainant was making it all up.** In fact, as Petitioner argued supra, since it is the function of the jury to make witness credibility determinations the jury should have been allowed to hear the testimony of both Petitioner's brother and wife to weigh against the allegations of the complainant, but due to counsel's failure to present such testimony the jury was most certainly deprived of hearing **"key"** or **"crucial"** defense testimony.

From the foregoing, since it is clear that counsel was the sole cause of the jury being denied the right to hear the testimony of Petitioner's brother and wife which equates itself with Petitioner receiving ineffective assistance of counsel within the purview of **Strickland v Washington**, supra, it is now upon Petitioner to show that he was prejudiced by counsel's actions and/or inactions. As to the first prong of the **Strickland** test it is clear that counsel's professional performance fell below an objective standard of reasonableness under prevailing professional norms. (**Strickland**, supra, **466 U.S. at 688**) In this regard, **counsel knew from his discussions with all involved parties that the complainant was exaggerating her testimony and**

**was being untruthful about Petitioner.** With counsel's knowledge of these facts it was clearly his duty **to introduce evidence that could have undercut the prosecution's case by effectively attacking the credibility of the complainant,** but in this case counsel failed to present such testimony, with this being so, and with counsel having no legitimate excuse for failing to present the testimony of Petitioner's wife and brother Petitioner maintains that counsel's actions fell below the standard of reasonableness discussed in **Strickland,** supra.

As to the second prong of the **Strickland** test Petitioner believes that due to the case against him being a credibility contest between himself and the complainant **any evidence that would have damaged the credibility of the complainant most certainly could have produced a different outcome under Strickland.** With this being the case, due to counsel having full knowledge of the testimony of both Petitioner's wife and brother and failing to present such evidence especially where the posture of the case against Petitioner was weak, Petitioner maintains that his counsel was ineffective within the purview of **Strickland** for failing to present said testimony.

**PETITIONER'S APPELLATE COUNSEL RENDERED INEFFECTIVE
ASSISTANCE THROUGHOUT THE COURSE OF PETITIONER'S
DIRECT APPEAL FOR FAILING TO ARGUE AND RAISE THE
ISSUE OF THE ILLEGAL SENTENCE GIVEN TO PETITIONER
ON COUNTS ONE AND TWO OF THE INFORMATION**

Prior to addressing the factual **and** legal merits of this
argument, it is imperative to state the correct proposition of law
as it relates to a criminal defendant's right to have the effective
assistance of counsel during the course of a first or Direct Appeal.
Since **1963** in **Douglas v California,** 372 U.S. 353, the High Court
has made clear that a criminal defendant has the right to receive
effective assistance of counsel throughout the course of a Direct
Appeal. (**Id. 372 U.S. at 355-57**) On the other hand, even though
there is clearly a right to have the effective assistance of counsel
during the appeals process (Direct Appeal), it has been noted that
appellate counsel need not raise every issue of merit siggested by
the client. (**Jones v Barnes, 463 U.S. 745, 754**) From this, while
Petitioner acknowledges that appellate counsel need not raise
every issue of merit within the purview of **Jones,** supra, it is also
clear that any issue rasied by appellate counsel in the appeal, in
order to satisfy the effective assistance of counsel requirement
mentioned by the **Douglas** court, must come from either the Trial
record and/or the Preliminary Hearing record **and must be accurately
stated based on the facts of the case at hand,** but in Petitioner's
case, as he will demonstrate, due to counsel's failure to read the
entire record of Petitioner's case prior to briefing the Appellate
Court on the merits of Petitioner's appeal, counsel misstated
important facts on two (2) counts Petitioner was found guilty at
trial, and due to counsel's failure to properly handle Petitioner's

appeal in relation to Petitioner's sentence which would have resulted in a reversal of a total of **eight (8) years, six (6) years on Count One, and two (2) years on Count Two**, and Petitioner maintains that he was prejudiced by his counsel's actions and/or inactions for failing to have his sentence reduced.

The facts relating to this sentencing error are as follows: at the Preliminary Hearing in Petitioner's case, one count was brought by the prosecution allegeing that Petitioner was a Resident Child Molester within the purview of **Penal Code § 288.5**. (see Count One of the Information attached as Exhibit **K** ) In this case, not only was Petitioner bound over on this Resident Child Molester allegation, but the Resident Child Molester allegation was also read to the jury prior to the commencement of the trial. (see R.T. 43, lines 15-27, attached as Exhibit **L** ) From the prosecution's charges and presentation of the case by the prosecution in order for Petitioner to have been found guilty of being a Resident Child Molester within the purview of **Penal Code § 288.5** it had to have been proven that Petitioner resided in the residence of the minor child or had recurring access to the minor child, **and** over a period of not less than three (3) months in duration engage in three (3) or more acts of substantail sexual conduct with a child under the age of fourteen (14) **or** commit three (3) or more acts of lewd or lascivious conduct with said child within the purview of **Penal Code § 288**. Now while the prosecution went through the **trial** arguing that Petitioner was a Resident Child Molester, at the conclusion of the trial, for reasons unknown to Petitioner, due to the proceedings not being transcribed, the trial court allowed the prosecution to drop the Resident Child Molester allegation and allowed the prosecution

to charge three (3) spearate **Penal Code § 288** allegations that
arose strictly from the **Penal Code § 288.5** allegation. (see Counts
One thru Three of the Amended Information attached as Exhibit **M** )

From the foregoing, as Petitioner will show, **due to the**
**Penal Code § 288.5 allegation being a "continuous course of conduct"**
**criminal venture the prosecution lacked discretion to separate**
**the charges into acts of Penal Code § 288 allegations.** In this
regard, the court in **People v Avina** (1993) 14 Cal. App. 4th 1303
discussing the intent of the Legislature in enacting **Penal Code**
**§ 288.5**, found that **§ 288.5** requires a continuous course of
conduct by the accused that can not be separated into separate acts
by the prosecution once the **§ 288.5** allegation is made:

> "[S]ection 288.5 displays a final characteristic of
> the course-of-conduct crime, one of substantial
> benefit to a defendant. When a criminal statute
> punishes a course of conduct, the prosecution may
> not divide that up into multiple counts of the
> offense; the entire continuous course constitutes
> only a single violation of the statute. [citation]
> The Legislature expressly incorporated this attribute
> of the course-of-conduct crime section 288.5
> subdivision (c): "...A defendant may be charged with
> only one count under this section unless more than
> one victim is involved in which case a separate count
> may be charged for each victim."
> (**People v Avina**, supra, 14 Cal. App. 4th at p. 1311.
> See also **People v Whitman** (1995) 38 Cal. App. 4th 1282)

With this statement from **Avina** discussing the Legislative Intent of
**Penal Code § 288.5** it is clear that the prosecution lacked discretion
to separate the acts charged under the Resident Child Molester
statute, with this being so it is now upon Petitioner to show this
Honorable Court that he was prejudiced by the prosecution's actions
of separating said allegations. In this case Petitioner was indeed
prejudiced under both the state and federal constitutions. In this
regard, the law is clear that in order for the prosecution to sustain

- 24 -

a conviction **the prosecution must prove the accused guilty beyond a reasonable doubt.** (<u>In re Winship</u>, 397 U.S. 358 (1970)) In the case at bar, in order for the prosecution to have met it's burden **the prosecution needed to prove three (3) counts of substantial sexual conduct with a child under the age of fourteen (14) <u>or</u> that Petitioner committed three (3) or more acts described in <u>Penal Code § 288</u>,** and in Petitioner's case while the jury did in fact find Petitioner guilty of Counts One and Two, **there was a finding of Not Guilty on Count Three.** With this being so, **if the prosecution had not been allowed to separate the acts charged as a <u>Penal Code § 288.5</u> allegation then Petitioner would have been found Not Guilty on the entire allegation since the prosecution failed in their burden of proof to prove three (3) acts.** As such, under the logic of both **People v <u>Avina</u>** and **People v <u>Whitman</u>,** supra, it is clear Petitioner's sentence should be modified to strike the sentence on Counts One and Two of the Information charging Petitioner with two counts of violating **Penal Code § 288** since these charges originated from the aforementioned **Penal Code § 288.5** allegation.

From the foregoing, since Petitioner can obviously show that the prosecution was allowed to illegally amend the charges in Petitioner's case, Petitioner also wishes to object to the process used by the court and counsel to amend said charges. As Petitioner pointed out supra, the proceedings concerning the amending the charges were done off the record. The only reason that Petitioner knows that the proceedings took place **is from the Clerk's Minutes:**

> **"[O]utside the presence of the jury, Court and counsel informally (off the record) discussed the Peoples desire to amend the information and proposed jury instructions."**
> (see highlighted portion of Minutes attached as Exhibit **N** )

From the foregoing, Petitioner believes that his rights were violated by not being allowed to be in the courtroom at the time of the aforementioned amendment and his rights were further violated by his trial counsel's failure to inform him of the amendment. In this regard, it is clear that if and when the prosecution is allowed to amend the information (even an illegal amendment), the accused must enter a plea to the amendment in open court and must be recorded. To this, Penal Code § 1009 (Amendment of accusatory instrument) makes clear:

> "[T]he defendant shall be required to plead to such amendment or amended pleading forthwith, or, at the time fixed for pleading..."

As well, both Penal Code § 1017 (Manner of making and entering plea) and Penal Code § 1018 (Presence of defendant when plea is made; Assistance of counsel; Withdrawl of plea; Pleas by corporations) make it clear that any plea made by the defendant must be made in open court by the defendant personally:

> "[E]very plea must be made in open court and, may be oral or in writing, shall be entered upon the minutes of the court, and shall be taken down in shorthand by the official reporter if one is present."
> (Penal Code § 1017, supra)

> "[U]nless otherwise provided by law, every plea shall be entered or withdrawn by the defendant himself or herself."
> (Penal Code § 1018, supra)

While the aforementioned Penal Code sections refer to a defendant's procedural rights instead of actual substantial rights of the defendant, it is more than clear that the defendant has the right to and must be personally involved in the proceedings at hand, but in Petitioner's case, due to the actions of his trial counsel, he was not only precluded from participating in the

-26-

proceedings leading up to the amendment of the information at the conclusion of trial, but Petitioner did not even know that the information had been amended. With these facts, Petitioner maintains that had his appellate counsel actually sat down and researched the issue complained of by Petitioner in this argument **counsel would have discovered under _Avina_ and _Whitman_ the prosecution lacked discretion to separate the charges brought under _Penal Code § 288.5_. As well, appellate counsel would have discovered both that the proceedings leading up to the amended information were not transcribed, and Petitioner did not know of and did not participate in the proceedings leading up to the amended information.** But counsel, instead of arguing issues such as that presented in _Avina_ and _Whitman_ that the charges could not be separated, all counsel did was argue that the sentencing court erred under **Cunningham v California**, 127 S.Ct. 856 (2007) when sentencing Petitioner, and these arguments brought by counsel regarding said **Cunningham error are clearly frivolous.** Petitioner never believed that counsel's **Cunningham** argument had merit and never agreed that counsel should proceed with his **Cunningham** strategy. In fact, to this date, no court has agreed with Petitioner's appellate counsel's reasoning, and this Honorable Court in **People v Black (Black II)** (slip opinion issued 7/19/07) expressly rejected thes same ideas raised by Petitioner's appellate counsel.

From the foregoing, Petitioner maintains that under both prongs of the **Strickland** test that appellate counsel's actions or inactions prejudiced Petitioner **and that had counsel not erred the outcome of the proceedings would have been different in that Petitioner's current sentence would have been reduced by eight (8)**

year. In this regard, both the United States Supreme Court and
the state court have recognized the importance of having
effective assistance of counsel during the sentencing phase of the
criminal proceedings. In fact, in **Glover v U.S.**, 531 U.S. 198
**(2001)** the United States Supreme Court made clear **that any amount
of jail time implicates a defendant's Sixth Amendment right to have
the effective assistance of counsel.** In **Glover**, the government,
in the lowers courts argued that the defendant had suffered no
prejudice by counsel's actions at sentencing, **but when the case
reached the High Court the government conceeded that the defendant
was prejudiced and the court agreed with this concession.** (**Glover**,
supra, 531 U.S. at 200) In **People v Cropper** (1979) 89 Cal. App. 3d
716, the court found that counsel was to be familiar with the
sentencing choice(s) and sentencing alternative(s) available to
the court prior to the sentencing of the defendant:

> "[D]efense counsel is under a duty to be familiar with
> the sentencing alternatives available to the court,
> to be certain that the court is aware of such
> alternatives to explain fully to the client the
> consequences of the various dispositions available <u>and
> to be certain that the sentence is based on complete
> and accurate information.</u>"
> (<u>Cropper</u>, supra, 89 Cal. App. 3d at p. 719)

Now while both **Glover** and **Cropper** discuss the duty(ies) of
trial counsel, Petitioner maintains that **if trial counsel has to
be aware of facts that could lead to a lesser/reduced sentence,
then appellate counsel too, must be aware of facts, or in this
case, decisions such as** Avina **and** Whitman**, supra, that could lead
to a reduced sentence such as this case where it is clear that
Petitioner's sentence could have been reduced by at least eight (8)
years had appellate counsel argued the case properly in the**

appellate court.

From the foregoing, since it is clear that the prosecution lacked discretion to separate the counts brought under **Penal Code § 288.5**, and since it is clear that Petitioner could not have been sentenced under the separate counts **since the amendment of the charges was illegal, Petitioner maintains that his appellate counsel was ineffective within the purview of Strickland and Ledesma, supra, for failing to raise the illgeal sentence with the appellate court.**

As a collateral note to this argument, since under cases such as **Glover** and **Cropper**, supra, that Petitioner should have been given effective assistance of counsel (trial counsel) at the time of sentencing and since there is no record that Petitioner's trial counsel ever made adequate and necessary objections to the illegal amendment of the charges by the prosecution, Petitioner **wishes** to incorporate into this argument **that his trial counsel was also ineffective for failing to recognize that Petitioner's prison sentence to Counts One and Two were illegal under the** logic of both **Avina** and **Whitman**, supra.

**PETITIONER CONTENDS THAT THE CUMULATION OF ERRORS
BROUGHT/DISCUSSED IN THIS PETITION AT THE VERY
LEAST WARRANT AN EVIDENTAIRY HEARING TO PROPERLY
DETERMINE THE PREJUDICE SUFFERED BY PETITIONER**

   Pursuant to the seminal case of **Chapman v California**, 386

**U.S. 18 (1967)** if a reviewing court faced with a question that a

criminal defendant/petitioner has had suffered a violation of his

federal constitutional rights, then it is upon the reviewing court

to weigh the facts and circumstances of the case and the complaint

made by the defendant/petitioner to see if the error(s) complained

of were harmless beyond a reasonable doubt, and if said error(s)

complained of were not harmless, then the defendant/petitioner

would be entitled to relief. (**Id. 386 U.S. at 23-24**) In the case

at bar, if this Honorable Court reviews the errors complained of

in this petition **under the totality of the evidence standard as is**

**dictated by the Strickland court (Strickland**, supra, **466 U.S. at 695-**

**696)** then Petitioner believes that this Honorable Court will be

satisfied that Petitioner's trial and sentencing after the

conviction **were fundamentally unfair under both the United States**

**and California Constitutions** due to Petitioner not receiving the

**effective assistance of counsel that he is entitled to.**

-30-

Court of Appeal, Sixth Appellate District - No. H028970
**S155207**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

THE PEOPLE, Plaintiff and Respondent,

v.

CELTO SIQUEIROS, Defendant and Appellant.

The petition for review is denied.

SUPREME COURT
**FILED**

SEP **1 2** 2007

Frederick K. Ohlrich Clerk

_____
Deputy

**GEORGE**
_____
Chief Justice

S157894

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re CLETO SIQUEIROS on Habeas Corpus

The petition for writ of habeas corpus is denied.

SUPREME COURT
FILED

APR 3 0 2008

Frederick K. Ohlrich Clerk

Deputy

**GEORGE**

Chief Justice



1    out.  The ragged edges smooth out.  It's not so rough, it's

2    not -- it's any swelling -- the swelling goes away and all

3    those sorts of things.  But it ends up being narrower in the

4    place where it was injured.  It's kind of like if you had a

5    doughnut and you stuck something through the doughnut hole and

6    tore it, it was a little ragged now it was too big to go

7    through that doughnut hole and some of the doughnut got kind

8    of torn and ragged and you smoothed it out so it's not ragged

9    anymore but it's going to be narrower in that area where you

10   smoothed it out.  That's kind of how nature heals hymenal

11   injuries, by smoothing out the torn place.

12          So when we see narrowing in this area between 3

13   o'clock and 9 o'clock, especially if it persists even when we

14   turn them over it's still narrow in that place, then we're

15   concerned that that may have been a penetrating -- that may

16   have been the result of an penetrating injury that's had time

17   to heal.

18          Q.   And was that, in fact, your finding in this case,

19   that what you observed was suggestive of prior penetrating

20   trauma?

21          A.   Yes.

22          Q.   Okay.  And by -- when I say penetrating trauma --

23   well, I won't say it.  What do you mean by that, "penetrating

24   trauma"?

25          A.   What I mean by that, that it's -- that some object

26   has gone in between the labia and has penetrated into --

27   potentially into that opening and has torn that tissue.

28          I differentiate that from the other more common



1  during consensual intercourse, do you?

2      A.   I don't -- I asked the child about any consensual

3  intercourse and she denied any consensual intercourse.

4      Q.   And if I may qualify that, without having the

5  child's input, looking at the result of your physical

6  examination, can you say whether or not -- can you say that

7  this definitely did not occur as a result of consensual

8  intercourse within the last year?

9      A.   No.

10      Q.   Now -- and of course, you can't tell, it's more

11  difficult once the girls have reached adolescence and their

12  hymen has been estrogenized and it's more difficult to look

13  and make these findings, correct?

14      A.   That's correct.

15      Q.   And as a matter of fact, when you first went to

16  examine Yasmin she was menstruating, right?

17      A.   That's right.

18      Q.   And so she came back at a later date to have the

19  examination done?

20      A.   That's right.

21      Q.   Okay.  A tampon could 'cause this type of injury,

22  correct?

23      A.   The studies done with looking at girls who have used

24  tampons did not indicate that they cause penetrating injuries

25  that we can recognize.

26      Q.   A finger could cause this type of injury?

27      A.   A finger could cause this type of injury.

28      Q.   Masturbation could cause this type of injury?

1    During that time, I spent some time with other

2  experts in the field of child sexual abuse in their clinics

3  observing them and working with them.  And have continued to

4  participate in trainings and in study groups, and at this

5  point, actually do trainings, I teach that medical.

6    Q.   How long have you been teaching how to do sexual

7  assault exams of children and related subjects?

8    A.   I've been teaching Stanford pediatric residents for

9  more than ten years.  I can't say exactly how many, but for

10  more than ten years.

11    Q.   You said that you started doing this work 17 years

12  ago?

13    A.   Yes.

14    Q.   Is that right?

15    In that time, how many pediatric examinations for

16  sexual assault have you done?

17    A.   I've done something over 4,000 exams.

18    Q.   Have you ever testified in court as an expert about

19  these kinds of exams?

20    A.   Yes, I have.

21    Q.   How many times?

22    A.   I've testified something between 150 and 200 times.

23    MR. GIBBONS-SHAPIRO:  Your Honor, at this time, the

24  People would request that Mary Ritter be designated and

25  qualified as an expert in the field of the performing of and

26  interpreting of sexual assault examinations of children.

27    THE COURT:  Do you wish to voir dire the witness on

28  the qualifications, Mr. Sharkey?



1     Q.   When you woke up in the morning, did you see anybody

2   when you woke up?

3     A.   Well, I don't know where was he, but then my uncle

4   Ramon came.

5     Q.   Your uncle Ramon came into the room?

6     A.   Yes.

7     Q.   And that was the next morning?

8     A.   Yeah.

9     Q.   And did he say something to you?

10     A.   Well, he -- well, he said he -- well, my pants were

11   like not -- I don't know how to say it.

12     Q.   Okay.  I know that you sometimes speak in Spanish;

13   is that right Yazmin?

14     A.   Yes.

15     Q.   When you woke up the next morning, were your

16   underpants and your pants all the way up?

17     A.   No.

18     Q.   Where were they?

19     A.   They were like up to my knee or something like that.

20     Q.   Up to your knees?

21     A.   To my thighs.

22     Q.   When you had gone to sleep, when you had gotten into

23   bed with your sister Maria, were your pants and underpants

24   down to your knees, were they all the way up when you first go

25   into bed with your sister Maria after you cleaned yourself up?

26     A.   They were.  I put them all the way up.

27     Q.   Do you know how they got down to your knees again

28   when you woke up?



1    A.    No.

2    Q.    What did your uncle Ramon say to you?

3    A.    Why were my pants down.

4    Q.    What did you say?

5    A.    Nothing.  I don't know.

6    Q.    Did you tell your uncle Ramon what had happened that

7  night?

8    A.    No.

9    Q.    How come?

10    A.    I didn't want to.  I don't know.  I don't know why I

11  didn't.

12    Q.    How come you didn't want to?

13    A.    'Cause, I was scared.  I don't know.

14    Q.    What were you scared of?

15    A.    I don't know.

16    Q.    Did your mom come back that same day that uncle

17  Ramon woke you up or was she back a couple days later?  When

18  did she come back?

19    A.    Couple days later.

20    Q.    When she came a couple days later, did you tell her

21  anything about what had happened that night?

22    A.    No.

23    Q.    How come?

24    A.    I don't know.  I was scared that they were going to

25  get into a fight.  I was nervous.  I was scared.

26    Q.    You were scared about someone getting in a fight?

27    A.    Yes.

28    Q.    Who were you scared was getting into a fight?

1
2
3
4
5
6
7
8
9
10
11
12
13
14

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

In re **CLETO SIQUEIROS,** )
          Petitioner, )
                    )
On **HABEAS CORPUS.**     )  **SWORN DECLARATION OF RAMON SIQUEIROS IN**
                    )  **SUPPORT OF HABEAS CORPUS**

15
16
17
18
19
20
21
22
23
24
25
26
27
28

    I, Ramon Siqueiros, declare:

    1. I am the author of this Sworn declaration. As such, I can testify to all of the facts stated herein if called upon to do so by this Honorable Court.

    2. Prior to my brother's trial I spoke with his attorney from the Santa Clara County Public Defender's Office on different occasions explaining to him that the testimony of my brother's step-daughter as it related to my brother allegedly molesting her was completely untrue.

    3. It was being testified to by my brother's step-daughter prior to my brother's trial and at the trial that I had witnessed her in bed with her pants down, and I had asked her what was going on. This statement is not true. I never witnessed such a thing and

1 I told my brother's attorney that I wanted to testify on my

2 brother's behalf, but I was never called to testify.

3    4. On other occasions, my brother's attorney was asking the

4 family for money or else my brother would be sent to prison if we

5 did not give him money. My brother's attorney is a Public

6 Defender who is paid by the county to represent persons who can

7 not afford a lawyer so there was no reason for him to be asking

8 the family for money. My mother, my wife, my sister, my brother's

9 wife and a couple of friends of the family were present in the

10 courtroom audience when the attorney would come out to talk to

11 the family during courtroom breaks about giving him money.

12    5. I believe that because we did not give the attorney the

13 money he requested the attorney did not represent my brother

14 properly during trial.

15    I declare under the penalty of perjury that the foregoing

16 is both true and correct and that this Sworn Declaration was

17 authored by me on this _27th_ day of _April_ , 2007 at

18 Santa Clara County, California.

19

20

21                    RAMON SIQUEIROS

22

23

24

25

26

27

28



1

2

3

4

5

6

7

8          IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

9                      SIXTH APPELLATE DISTRICT

10

11

12   In re CLETO SIQUEIROS, )
               Petitioner, )
13                          )
     On HABEAS CORPUS.      )    SWORN DECLARATION OF GAVINA VALDEZ IN
14   _____)    SUPPORT OF HABEAS CORPUS

15

16          I, Gavina Valdez, declare:

17          1. I am the author of this Sworn Declaration and know the

18   facts stated in this document are true and correct and can testify

19   to the facts stated herein if called to do so by the Court.

20          2. I am the mother of Cleto siqueiros, and attended most

21   of the proceedings in the case. During the course of my son's

22   trial, the attonrey who was representing my son would come out to

23   the audience during breaks and speak to the family about giving

24   him money. We were not able to give him any money because we did

25   not have it, and the attorney should not have been asking for

26   money in the first place. The attorney was from the Public

27   Defender's Office, and was being paid to represent my son because

28   we could not afford to get him private counsel.

3. Prior to the attorney asking the family for money and prior to the start of my son's trial, I had spoken with the attorney telling him that I believed my son was innocent of the charges and that the attorney should investigate the case against my son, but the attorney never bothered to do any type of investigation and I believe my son ended up being sent to prison because the attorney was more worried about money then he was in helping my son.

I declare under the penalty of perjury that the foregoing is both true and correct and that this document was authored by me on ___4___ ___28___, 2007, at Santa Clara County, Calif.


GAVINA VALDEZ

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

In re **CLETO SIQUEIROS,** )
              Petitioner,)
                      )
On **HABEAS CORPUS.**     )   **SWORN DECLARATION OF JUANA SIQUEIROS IN**
_____ )   **SUPPORT OF HABEAS CORPUS**

     I, Juana Siqueiros, declare:

     1. I am the author of this Sworn Declaration and I know the facts stated herein are both true and correct and can testify to any such facts if called to do so by the court in this matter.

     2. During the trial of my brother, the attorney who was from the Public Defender's Office would come out to the audience on breaks and ask the family for money. Mr. Sharkey was appointed to represent my brother because the family could not afford to hire a lawyer to help my brother, so I believe that by him asking the family for money was wrong, and I believe that Mr. Sharkey was more worried about how much money he could get from the family instead of how he was going to represent my brother, and due to this failure to help my brother there is no question that my brother

-1-

1  went to prison because his attorney was not willing to help him.

2       I declare under the penalty of perjury that the foregoing

3  is both true and correct, and that this document was authored by

4  me on _04-27_____, 2007, at Santa Clara County, California.

5

6

7

8                          *Juana Siqueiros*
9                          JUANA SIQUEIROS

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8          IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
9                     SIXTH APPELLATE DISTRICT
10
11
12   In re **CLETO SIQUEIROS,** )
               Petitioner,)
13                          )
     On **HABEAS CORPUS.**       )   SWORN DECLARATION OF MARICELA FLORES IN
14   _____ )   SUPPORT OF HABEAS CORPUS
15
              I, Maricela Flores, declare:
16
              1. I am the author of this Sworn Declaration. As such, I
17
     can testify to the facts stated in this document if called to do
18
     so by the court.
19
              2. I am the wife of Ramon Siqueiros, brother-in-law to
20
     Cleto Siqueiros. Prior to my brother-in-law's trial, my husband
21
     had spoken with my brother-in-law's attorney on different occasions
22
     asking to testify at the trial due to my brother-in-law's step-
23
     daughter not telling the truth about her being molested and
24
     blaming my brother-in-law for the molestation. But at no time
25
     did my husband ever get called to testify.
26
              3. I was also present in court, sitting in the audience,
27
     when my brother-in-law's attorney would come out to talk to the
28

                                   _1_

f

1  family about giving him money to represent my brother-in-law, or
2  else he would go to prison. These conversations would take place
3  during courtroom recesses. My brother-in-law was represented by
4  the Public Defender's Office, and he was getting paid to represent
5  my brother-in-law so there was no reason for the familiy to give
6  him money. And I feel that because the attorney did not get the
7  money he did not represent my brother-in-law the way he should
8  have and this caused my brother-in-law to be sent to prison.

9       I declare under the penalty of perjury that the foregoing
10 is both true and correct, and that this document was authored by
11 me on 4-27-_____, 2007, at Santa Clara County, California.
12
13
14                    MAR.cela Flores
15                    MARICELA FLORES
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8        IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

9               SIXTH APPELLATE DISTRICT

10

11

12  In re CLETO SIQUEIROS, )
                Petitioner, )
13                           )
    On HABEAS CORPUS.        )    SWORN DECLARATION OF MICAELA MORALES IN
14  _____  )    SUPPORT OF HABEAS CORPUS

15

16        I, Micaela Morales, declare:

17        1. I am the wife of Cleto Siqueiros, and I am the author

18  of this Sworn Declaration, as such I can testify to any of the

19  facts stated herein if called to do so by the court.

20        2. After my husband's arrest I began to realize that my

21  daughter was maqking up stories claiming that my husband had

22  molested here. I knew her allegations were false due to the fact

23  my daughter claimed that I had witnessed some of these claimed

24  molestations and argued with my husband over his actions. None of

25  what my daughter claimed was true. I did not witness any such

26  actions on the part of my husband and I told his attorney that I

27  wanted to testify at the trial. While I was called to testify I

28  was never asked any questions regarding the lies told by my

G

1 | daughter, and I don't know why the attorney never asked these
2 | questions.

3 |     3. On other occasions, the attorney who was appointed to
4 | represent my husband would come to the audience during court
5 | breaks and ask the family for money. The way the attorney was
6 | speaking to the family it appeared that if we did not give him
7 | the money he requested that the attorney was not going to help
8 | my husband. I know the attorney should not have been asking for
9 | money because he worked for the Public Defender's Office, and
10 | they are paid to represent people who can not afford lawyers.

11 |     4. I belive that beacuse we did not give the attorney
12 | money that this is why my husband went to prison.

13 |     I declare under the penalty of perjury that the foregoing
14 | is true and correct and that this document was authored by me on
15 | this ___27th___ day of ___April___, 2007, at Santa Clara
16 | County, California.

18 |                    _micaela morales_
19 |                    MICAELA MORALES



```
 1       A.   No.

 2       Q.   How come?

 3       A.   I don't know.

 4       Q.   So you told her about how he grabbed your chest.

 5   When he grabbed your chest, did he -- was he in front of you

 6   when he grabbed your chest?

 7       A.   Yes.

 8       Q.   And how did he grab it?

 9       A.   Well, he just grabbed it and rubbed it.

10       Q.   With his hands?

11       A.   Yes.

12       Q.   Did he rub it with both hands, rub your chest with

13   both hands or just with one?

14       A.   One.

15       Q.   Where was the other hand?

16       A.   I don't know.  I guess I wasn't looking at it.

17       Q.   Okay.  Did he say anything to you when he was

18   rubbing your chest?

19       A.   No.  But when he stopped, he says if I tell

20   somebody, something was going to happen.

21       Q.   So a couple days later, either the next day or

22   couple days later, you told your mom about that, right?

23       A.   Yeah.

24       Q.   And you said that at that point, or at some point

25   thereafter, she and your stepdad, the defendant, got into a

26   fight?

27       A.   Yes.

28       Q.   Did you see them get into that fight?
```



1    A.    Well, he grabbed my hand, put it on his penis.

2    Q.    Was his penis -- how did his penis feel at that
3 point?

4    A.    Hard.

5    Q.    What was he doing with his other hand when he had
6 one of his hands putting your hand on his penis?

7    A.    I don't know what he was doing with the other hand.

8    Q.    Was he looking at you or saying anything to you?

9    A.    No.  It was just looking down.

10    Q.    He was just looking down?

11    A.    Yeah.

12    Q.    Where were you looking?

13    A.    I was looking at his face and I don't know.

14    Q.    How did you feel at that point?

15    A.    I felt like telling my mom, but then I couldn't.  I
16 don't know.

17    Q.    How come you couldn't tell your mom?

18    A.    I don't know.  I just couldn't.

19    Q.    You said at some point your mom came in?

20    A.    Yes.

21    Q.    When your mom came in, was your hand still on his
22 penis?

23    A.    No.

24    Q.    Were his pants still down when your mom came in?

25    A.    Yes.

26    Q.    What happened next after your mom came in?

27    A.    Well, my mom came in and then I just pulled my pants
28 up and he did too, and she saw us putting our pants up.  And



```
 1    then when my mom, she was -- she was mad.  And then they
 2    started arguing and I just got out.
 3         Q.   Where were they arguing?
 4         A.   Um.
 5         Q.   Were they arguing in the bathroom or somewhere else?
 6         A.   Well, the bathroom's like in the room we were
 7    living.
 8         Q.   The bedroom was right next to the bathroom?
 9         A.   Yeah.
10         Q.   So did they argue in the bedroom or in the bathroom?
11         A.   In the bedroom.
12         Q.   And you said you just got out.  Where did you go?
13         A.   I was just right there in the living room.
14         Q.   Did you talk to your mom about what had happened?
15         A.   That time I didn't.
16         Q.   How come?
17         A.   I don't know.  I couldn't.  I don't know why.
18         Q.   When was the next time after that that there was
19    some touching between you and your stepdad?
20         A.   After which one?
21         Q.   After what happened in the bathroom when you were in
22    kindergarten.
23         A.   It was 3rd grade, I think.
24         Q.   When you were in 3rd grade, how did you get to
25    school when you were in 3rd grade?
26         A.   Well, he drove me.
27         Q.   How would you get home from school?
28         A.   Walking or sometimes they -- someone would come pick
```

)UPERIOR COURT OF CALIFORNI
COUNTY OF SANTA CLARA

THE PEOPLE OF THE STATE OF CALIFORNIA,        |        10/25/04
                                    Plaintiff, |
                                               |        DA NO      040513411
                                               |        CEN
                                               |        04025212  CS  HELD  10/25/2004
                        vs.                    |
                                               |
CLETO SIQUEIROS (4/26/1969), 1K,               |        INFORMATION NO.  CC452893
2826 CIZAMEZ CIR, SAN JOSE, CA                 |
                                  Defendant(s) |



OCT 2 7 2004
KIRI TORRE
Chief Executive Officer/Clerk
Superior Court of CA, County of Santa Clara
BY_____DEPUTY

I N F O R M A T I O N
S U M M A R Y

| Count | Charge | Charge Range | Defendant | Allegation | Alleg. Effect |
|-------|--------|--------------|-----------|------------|---------------|
| 1 | PC288.5(a) | 6-12-16 | CLETO SIQUEIROS | | |
| 2 | PC269 | 15-life | CLETO SIQUEIROS | | |
| 3 | PC288(b)(1) | 3-6-8 | CLETO SIQUEIROS | PC667.61(b)/(e) | 15-life |
| 4 | PC288(b)(1) | 3-6-8 | CLETO SIQUEIROS | | |

85



The District Attorney of the C̲   ̲ty of Santa Clara, by this Informatio   ̲eges that:

### COUNT 1

On or about and between January 15, 1995 and January 14, 2001, in the County of Santa Clara, State of California, the crime of CONTINUOUS SEXUAL ABUSE OF A CHILD UNDER FOURTEEN - RESIDENT CHILD MOLESTING, in violation of PENAL CODE SECTION 288.5(a), a Felony, was committed by CLETO SIQUEIROS who did while residing in the same home with and having recurring access to a minor child, Yazmin Doe, four to nine years of age years old, and under the age of fourteen (14) years, during a period of not less than three months, engaged in three and more acts of lewd and lascivious conduct under section 288 of the Penal Code, with the child.

A conviction of the offense charged in this count requires the defendant to register pursuant to Penal Code section 290. A *felony* conviction of the offense requires that the defendant provide two specimens of blood, a saliva sample, right thumbprints, and a full palm print impression of each hand pursuant to Penal Code section 296(a).

### COUNT 2

On or about and between January 15, 2001 and January 14, 2002, in the County of Santa Clara, State of California, the crime of AGGRAVATED SEXUAL ASSAULT OF A CHILD UNDER 14 AND 10 OR MORE YEARS YOUNGER THAN THE DEFENDANT, in violation of PENAL CODE SECTION 269, a Felony, was committed by CLETO SIQUEIROS who did commit a violation of Penal Code section 261(a)(2) (RAPE) upon Yazmin Doe, a child who was ten years old and who was both under the age fourteen (14) years and ten and more years younger than the defendant.

A conviction of the offense charged in this count requires the defendant to register pursuant to Penal Code section 290. A *felony* conviction of the offense requires that the defendant provide two specimens of blood, a saliva sample, right thumbprints, and a full palm print impression of each hand pursuant to Penal Code section 296(a).

### COUNT 3

On or about and between January 15, 2001 and January 14, 2002, in the County of Santa Clara, State of California, the crime of LEWD OR LASCIVIOUS ACT ON A CHILD BY FORCE, VIOLENCE,

**86**



DURESS MENACE AND FE ʀ, in violation of PENAL CODE SEC. ʒN 288(b)(1), a Felony, was committed by CLETO SIQUEIROS who did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Yazmin Doe, a child under the age of fourteen years, namely 10, by use of force, violence, duress, menace and fear of immediate and unlawful bodily injury on the child and another person and with the intent of arousing, appealing to and gratifying the lust, passions and sexual desires of the defendant and of the child.

It is further alleged that the defendant(s) is/are not eligible for probation and the suspension of sentence, within the meaning of Penal Code section 1203.066(a)(1).

A conviction of the offense charged in this count requires the defendant to register pursuant to Penal Code section 290. A *felony* conviction of the offense requires that the defendant provide two specimens of blood, a saliva sample, right thumbprints, and a full palm print impression of each hand pursuant to Penal Code section 296(a).

It is further alleged that the defendant, CLETO SIQUEIROS, personally inflicted great bodily injury on the victim or another person in the commission of the present offense in violation of Section 12022.53, 12022.7, or 12022.8, within the meaning of Penal Code sections 667.61(b) and 667.61(e).

### COUNT 4

On or about and between January 15, 2001 and May 7, 2004, in the County of Santa Clara, State of California, the crime of LEWD OR LASCIVIOUS ACT ON A CHILD BY FORCE, VIOLENCE, DURESS MENACE AND FEAR, in violation of PENAL CODE SECTION 288(b)(1), a Felony, was committed by CLETO SIQUEIROS who did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Yazmin Doe, a child under the age of fourteen years, namely ten, eleven, twelve and thirteen, by use of force, violence, duress, menace and fear of immediate and unlawful bodily injury on the child and another person and with the intent of arousing, appealing to and gratifying the lust, passions and sexual desires of the defendant and of the child.

It is further alleged that the defendant(s) is/are not eligible for probation and the suspension of sentence, within the meaning of Penal Code section 1203.066(a)(1).

**87**



A conviction of the offense cl    ,ed in this count requires the defendan    register pursuant to Penal Code section 290. A *felony* conviction of the offense requires that the defendant provide two specimens of blood, a saliva sample, right thumbprints, and a full palm print impression of each hand pursuant to Penal Code section 296(a).

## REQUEST FOR TRIAL PRIORITY PURSUANT TO PENAL CODE § 1048

The case charged above falls within the provisions of Penal Code section 1048, and the People therefore respectfully request that the case be given the trial priority provided by that section.

## NOTICE AND STATEMENT OF PROBABLE CAUSE FOR AIDS TESTING

Complainant alleges that the official reports and documents of a law enforcement agency attached to this document and incorporated by reference establish that there is probable cause to believe that a transfer of bodily fluids from the defendant, Cleto Siqueiros, to a victim has occurred within the meaning of Penal Code section 1524.1 and/or Health and Safety Code sections 121055 and 121060.

You are notified that, if at the conclusion of the probable cause hearing the magistrate determines that the requirements of Penal Code section 1524.1, and/or Health and Safety Code sections 121055 and 121060 have been met, the defendant will be ordered to submit to a blood test to detect the AIDS antibody and/or other communicable diseases as provided by statute.



Pursuant to Penal Code Secti    /1054 through 1054.7, inclusive, the l    ple request that, within 15

days, the defendant and/or his/her attorney disclose: (A) The names and addresses of persons, other

than the defendant, he/she intends to call as witnesses at trial, together with any relevant written or

recorded statements of those persons, or reports of the statements of those persons, including any

reports or statements of experts made in connection with the case, and including the results of any

physical or mental examinations, scientific tests, experiments, or comparisons which the defendant

intends to offer as evidence at the trial.  (B) Any real evidence which the defendant intends to offer in

evidence at the trial.  This request is a continuing request, to cover not only all such material

currently in existence, but all material which comes into existence to the conclusion of this case.


George W. Kennedy
District Attorney

By
James Gibbons-Shapiro
Deputy District Attorney

89-94



1  from the jury. You are not to speculate as to the reason why

2  that occurred. If, at the end of the case, if you talk to the

3  attorneys, they can probably let you know what happened.

4          But at this time, what we're going to do is

5  substitute one of the alternates. This is why we have

6  alternates. And I have a little card in here for No. 1 and

7  No. 2. We're very sophisticated. I'll ask my clerk to --

8          THE CLERK: You guys all laugh but you're sitting

9  there. Alternate juror No. 1.

10          THE COURT: So you switch seats. We now have our 12

11  members of the jury. At this time, Ladies and Gentlemen, I'm

12  going to, again, read the information to you. Remember, the

13  information is only a list of charges. It is not evidence

14  against the defendant.

15          The District Attorney of the County of Santa Clara,

16  by this information, alleges that, count 1, on or about and

17  between January 15, 1995 and January 14, 2001, in the County

18  of Santa Clara, State of California, the crime of continuous

19  sexual abuse of a child under 14, resident child molesting, in

20  violation of Penal Code section 288.5 subdivision (a), a

21  felony, was committed by Cleto Siqueiros, who did, while

22  residing in the same home with and having recurrent access to

23  a minor child, Yasmin Doe, four to nine years of age, and

24  under the age of 14 years, during a period of not less than

25  three months, engaged in three and more acts of lewd and

26  lascivious conduct under section 288 of the Penal Code, with

27  the child.

28          Count 2. On or about and between January 15, 2001,



SUPERIOR COURT OF CALIFORNIA
COUNTY OF SANTA CLARA

THE PEOPLE OF THE STATE OF CALIFORNIA,
                                    Plaintiff,

                        vs.

CLETO SIQUEIROS (4/26/1969), 1K,
2826 CIZAMEZ CIR, SAN JOSE, CA
                                    Defendant(s)

1/11/05

DA NO     040513411
CEN
04025212   CS   HELD   1/11/2005

**FIRST AMENDED**
INFORMATION NO.  CC452893

FILED

JAN 1 3 2005
KIRI TORRE
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY_____ DEPUTY

INFORMATION
SUMMARY

| Count | Charge | Charge Range | Defendant | Allegation | Alleg. Effect |
|---|---|---|---|---|---|
| 1 | PC288(a) | 3-6-8 | CLETO SIQUEIROS | | |
| 2 | PC288(a) | 3-6-8 | CLETO SIQUEIROS | | |
| 3 | PC288(a) | 3-6-8 | CLETO SIQUEIROS | | |
| 4 | PC269 | 15-life | CLETO SIQUEIROS | | |
| 5 | PC288(b)(1) | 3-6-8 | CLETO SIQUEIROS | PC667.61(b)/(e) | 15-life |
| 6 | PC288(b)(1) | 3-6-8 | CLETO SIQUEIROS | | |

134C



The District Attorney of the County of Santa Clara, by this Information, alleges that:

## COUNT 1

On or about and between January 15, 1995 and January 14, 2001, in the County of Santa Clara, State of California, the crime of LEWD AND LASCIVIOUS ACT ON A CHILD UNDER FOURTEEN, in violation of PENAL CODE SECTION 288(a), a Felony, was committed by CLETO SIQUEIROS who did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Yazmin Doe, a child under the age of fourteen years, namely, four to nine years of age, with the intent of arousing, appealing to and gratifying the lust, passions, and sexual desires of the defendant child.

A conviction of the offense charged in this count requires the defendant to register pursuant to Penal Code section 290. A *felony* conviction of the offense requires that the defendant provide two specimens of blood, a saliva sample, right thumbprints, and a full palm print impression of each hand pursuant to Penal Code section 296(a).

## COUNT 2

On or about and between January 15, 1995 and January 14, 2001, in the County of Santa Clara, State of California, the crime of LEWD AND LASCIVIOUS ACT ON A CHILD UNDER FOURTEEN, in violation of PENAL CODE SECTION 288(a), a Felony, was committed by CLETO SIQUEIROS who did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Yazmin Doe, a child under the age of fourteen years, namely, four to nine years of age, with the intent of arousing, appealing to and gratifying the lust, passions, and sexual desires of the defendant child.

A conviction of the offense charged in this count requires the defendant to register pursuant to Penal Code section 290. A *felony* conviction of the offense requires that the defendant provide two specimens of blood, a saliva sample, right thumbprints, and a full palm print impression of each hand pursuant to Penal Code section 296(a).

134D



## COUNT 3

On or about and between January 15, 1995 and January 14, 2001, in the County of Santa Clara, State of California, the crime of LEWD AND LASCIVIOUS ACT ON A CHILD UNDER FOURTEEN, in violation of PENAL CODE SECTION 288(a), a Felony, was committed by CLETO SIQUEIROS who did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Yazmin Doe, a child under the age of fourteen years, namely, four to nine years of age, with the intent of arousing, appealing to and gratifying the lust, passions, and sexual desires of the defendant child.

A conviction of the offense charged in this count requires the defendant to register pursuant to Penal Code section 290. A *felony* conviction of the offense requires that the defendant provide two specimens of blood, a saliva sample, right thumbprints, and a full palm print impression of each hand pursuant to Penal Code section 296(a).

## COUNT 4

On or about and between January 15, 2000 and January 14, 2002, in the County of Santa Clara, State of California, the crime of AGGRAVATED SEXUAL ASSAULT OF A CHILD UNDER 14 AND 10 OR MORE YEARS YOUNGER THAN THE DEFENDANT, in violation of PENAL CODE SECTION 269, a Felony, was committed by CLETO SIQUEIROS who did commit a violation of Penal Code section 261(a)(2) (RAPE) upon Yazmin Doe, a child who was nine to ten years old and who was both under the age fourteen (14) years and ten and more years younger than the defendant.

A conviction of the offense charged in this count requires the defendant to register pursuant to Penal Code section 290. A *felony* conviction of the offense requires that the defendant provide two specimens of blood, a saliva sample, right thumbprints, and a full palm print impression of each hand pursuant to Penal Code section 296(a).

## COUNT 5

On or about and between January 15, 2000 and January 14, 2002, in the County of Santa Clara, State of California, the crime of LEWD OR LASCIVIOUS ACT ON A CHILD BY FORCE, VIOLENCE, DURESS MENACE AND FEAR, in violation of PENAL CODE SECTION 288(b)(1), a Felony, was

134E



committed by CLETO SIQU    IOS who did willfully and lewdly con.   ₁ a lewd and lascivious act upon and with the body and certain parts and members thereof of Yazmin Doe, a child under the age of fourteen years, namely nine and ten, by use of force, violence, duress, menace and fear of immediate and unlawful bodily injury on the child and another person and with the intent of arousing, appealing to and gratifying the lust, passions and sexual desires of the defendant and of the child.

It is further alleged that the defendant(s) is/are not eligible for probation and the suspension of sentence, within the meaning of Penal Code section 1203.066(a)(1).

A conviction of the offense charged in this count requires the defendant to register pursuant to Penal Code section 290. A *felony* conviction of the offense requires that the defendant provide two specimens of blood, a saliva sample, right thumbprints, and a full palm print impression of each hand pursuant to Penal Code section 296(a).

It is further alleged that the defendant, CLETO SIQUEIROS, personally inflicted great bodily injury on the victim or another person in the commission of the present offense in violation of Section 12022.53, 12022.7, or 12022.8, within the meaning of Penal Code sections 667.61(b) and 667.61(e).

### COUNT 6

On or about and between January 15, 2001 and May 7, 2004, in the County of Santa Clara, State of California, the crime of LEWD OR LASCIVIOUS ACT ON A CHILD BY FORCE, VIOLENCE, DURESS MENACE AND FEAR, in violation of PENAL CODE SECTION 288(b)(1), a Felony, was committed by CLETO SIQUEIROS who did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Yazmin Doe, a child under the age of fourteen years, namely ten, eleven, twelve and thirteen, by use of force, violence, duress, menace and fear of immediate and unlawful bodily injury on the child and another person and with the intent of arousing, appealing to and gratifying the lust, passions and sexual desires of the defendant and of the child.

It is further alleged that the defendant(s) is/are not eligible for probation and the suspension of sentence, within the meaning of Penal Code section 1203.066(a)(1).

134F



A conviction of the offense c    ged in this count requires the defenda    register pursuant to Penal Code section 290. A *felony* conviction of the offense requires that the defendant provide two specimens of blood, a saliva sample, right thumbprints, and a full palm print impression of each hand pursuant to Penal Code section 296(a).

### REQUEST FOR TRIAL PRIORITY PURSUANT TO PENAL CODE § 1048

The case charged above falls within the provisions of Penal Code section 1048, and the People therefore respectfully request that the case be given the trial priority provided by that section.

### NOTICE AND STATEMENT OF PROBABLE CAUSE FOR AIDS TESTING

Complainant alleges that the official reports and documents of a law enforcement agency attached to this document and incorporated by reference establish that there is probable cause to believe that a transfer of bodily fluids from the defendant, Cleto Siqueiros, to a victim has occurred within the meaning of Penal Code section 1524.1 and/or Health and Safety Code sections 121055 and 121060.

You are notified that, if at the conclusion of the probable cause hearing the magistrate determines that the requirements of Penal Code section 1524.1, and/or Health and Safety Code sections 121055 and 121060 have been met, the defendant will be ordered to submit to a blood test to detect the AIDS antibody and/or other communicable diseases as provided by statute.

134G

Pursuant to Penal Code Sect    1054 through 1054.7, inclusive, the     ple request that, within 15 days, the defendant and/or his/her attorney disclose:  (A) The names and addresses of persons, other than the defendant, he/she intends to call as witnesses at trial, together with any relevant written or recorded statements of those persons, or reports of the statements of those persons, including any reports or statements of experts made in connection with the case, and including the results of any physical or mental examinations, scientific tests, experiments, or comparisons which the defendant intends to offer as evidence at the trial.  (B) Any real evidence which the defendant intends to offer in evidence at the trial.  This request is a continuing request, to cover not only all such material currently in existence, but all material which comes into existence to the conclusion of this case.

George W. Kennedy
District Attorney

By _____

James Gibbons-Shapiro
Deputy District Attorney

134H



| | |
|---|---|
| 11:13am | The jury was summoned and returned to Department 38. The Court addressed the jury regarding the issue at hand. The jury was admonished and excused for the noon recess. Jurors numbered 7 and 3 remained. |
| 11:17am | **Juror #7** addressed the Court and counsel. Outside the presence of any other juror, **juror #3** stated that Ms. Valdez tried to communicate with her as well. **Juror #3** told the Court she does not speak Spanish and she ignored Ms. Valdez. After questioning by Court and counsel, **juror #3** was excused for the noon recess. |
| 11:24am | Outside the presence of the jury, the Court made a request that counsel return at 1:20pm to discuss their positions on the events of the morning session. |
| 1:27pm | Outside the presence of the jury, Court and counsel discussed (off the record) the standard which must be met to remove a sworn juror. The Defendant was assisted by Thelma Oros, certified Spanish language interpreter. |
| 1:29pm | On the record, both parties agreed not to remove any juror from the panel. The jury was summoned and returned to Department 38. |
| 1:34pm | The Court addressed the jury directly regarding where to take their breaks during the remainder of the trial. |
| 1:35pm | Mr. Sharkey delivered his opening statement on behalf of the Defendant, Cleto Siqueiros. |
| 1:38pm | The Defendant took the witness stand in his own defense. After being duly sworn, the Defendant was examined and testified. |
| 2:07pm | Cross examination conducted by DDA Gibbons-Shapiro. |
| 2:56pm | The jury was admonished and excused for the afternoon break. |
| 3:13pm | Cross examination of the Defendant resumed with the assistance of certified Spanish language interpreter Anna-Marie Massung. |
| 3:42pm | After a brief side bar, the Court addressed the jury regarding the use of a certified Spanish language interpreter. The Defendant was excused. |
| 3:44pm | **Betty Siqueiros** was called as a witness on behalf of the Defendant. After being duly sworn, the witness was examined and testified. |
| 3:50pm | Cross examination conducted by DDA Gibbons-Shapiro. |
| 3:54pm | The witness was excused and the Defense rests. |
| 3:56pm | The jury was admonished, excused and ordered to return at 10am on January 13, 2005. |
| 3:57pm | Outside the presence of the jury, Court and counsel informally (off the record) discussed the Peoples desire to amend the Information and proposed jury instructions. Court adjourned for the evening recess at 4:41pm. |

134B



United States District Court
Northern District
San Jose Division
280 S. First ST # 2112
San Jose, CA 95113-3002

C.S.A.T.E. STATE PRISON

INSPECTED BY

JUN - 6 2008

MARSHALS SERVICE

WHEN SCANNING -
ENVELOPE -
SCAN BOTH SIDES
BACK OF ENVELOPE
"BECAUSE OF
DATE", HE CASE

STAFF
V-7G6201/-0-111
P.O. Box 5242
Corcoran, CA 93212